### David W. Naill et al. *vs.* Rachel Maurer.

Husband & Wife: Dower,—when barred by ante-nuptial agreement: Contract,—consideration: Code, Art. 93, sec. 289: Code, Art. 16, sec. 30: Jurisdiction in Equity in cases of Dower.—Husband and wife had agreed in writing, before marriage, that neither would claim during their marriage, or after the death of the other, any interest whatever in the property or estate of the other. After the death of the husband, the wife filed a bill for the assignment of dower in the real estate of the husband, and for damages for its detention. The defendants, heirs-at-law of the husband, in their answers, by way of defence, relied on the ante-nuptial agreement. There was no evidence of fraud or imposition practiced upon the wife in the procurement of the agreement, but on the contrary, it was proved that it was made in contemplation of marriage, in good faith, and by competent parties.—Held:

1st. That the agreement or contract cannot be avoided for want of consideration; that either the reciprocal stipulations of the contract or the proposed marriage would constitute a consideration, in every way sufficient to render the contract valid and binding.

2nd. That the legal operation of the contract is not affected by Art. 93, sec. 289 of the Code; that is a simple statutory declaration, that a settlement of property by jointure or otherwise, on a woman by her husband, before marriage, shall bar her of dower in his lands.

3rd. That this is not a case of a settlement or jointure, but of a contract between competent parties, executed in good faith, and upon a good consideration, by which the wife has expressly relinquished all right to claim any estate or interest in the property of her deceased husband.

4th. That the power of the wife to bind herself by such a contract, in equity, must be admitted, and it cannot be doubted that this contract constituted an equitable bar to the claim sought to be enforced by this bill.

5th. That the 30th sec. of Art. 16 of the Code, giving Courts of Equity concurrent jurisdiction with Courts of Law in cases of dower, does not confer the simple jurisdiction of a Court of Law, or limit Courts of Equity by rules applicable to proceedings at law, but authorizes them to determine and finally adjudicate claims for dower by the principles and rules of equity.

Appeal from the Circuit Court of Baltimore city.

The bill in this cause was filed on the 22nd of March,

1861, by the appellee, as widow of Paul Maurer, for an assignment of dower, damages for its detention, and for discovery. It states that the appellee was married to said Maurer in 1852, and that he died in 1853, seized of a large real estate in Baltimore city, and in Carroll and Frederick counties; that he died intestate, and that parcels of said lands are in possession of some of the defendants as his heirs-at-law, and of the other defendants; and the bill prays for the relief as above stated, and for general relief.

The answers admit the allegations of the bill, but set up the defence that prior to the marriage of the appellee with said Maurer, they entered into a marriage contract, whereby each mutually agreed not to claim during the marriage, or after the death of the other, any interest whatever in the property or estate of the other. The contract was exhibited with the answers.

It was proved on the part of the appellee, that at the time of her marriage with said Maurer, she was in reduced circumstances, and was his housekeeper, and that since his death, she had been living in a condition of actual want; that she knew nothing of business, and was hardly able to to understand the meaning of such contract if read to her.

It was also proven on the part of the appellants, by Basil Root, that he prepared the ante-nuptial contract in question, and was present at its execution; that during the preparation of it, he had repeated conversations with both parties, in the presence of each other, and that Maurer said he had settled on his wife the sum of $4,000, including a ground-rent, to which Mrs. Maurer, (then Rachel Bond,) assented, and expressed herself satisfied, saying further, that the marriage contract was not necessary, as she would never trouble Maurer's estate.

It was also shown that said Paul Maurer died seized of real estate worth $54,262.50; and further proved that the said marriage contract was found among the papers of the

said Maurer after his death, and that the same had not been lodged anywhere for record, and in fact, there is no legal proof that it was ever lodged for record anywhere until the year 1857, in Carroll county.

The Court below decreed that the appellee was entitled to the relief prayed, and referred the cause to the auditor to state an account in conformity with its decision. From this decree the present appeal was taken.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough, Cochran, and Weisel, J.

*S. T. Wallis* and *Edward Israel* for the appellants:

The effect of the ante-nuptial contract, if valid, is determined, to some extent, in the case of *Maurer vs. Naill*, 3 *Md. Rep.*, 324, on an appeal from the Orphans' Court, between the same parties. The Court below decreed for the complainants.

The appellants contend, that the ante-nuptial contract in question was fairly and voluntarily entered into by the complainant when *sui juris*, and, being such, divested and divests her of all claim of dower, without reference to the amount of the consideration which she may have been satisfied to accept instead of dower, or to the extraneous circumstances set forth in the opinion of the Court below, and by which its judgment appears to have been controlled. That they are no more in the position of parties seeking to enforce specific performance than any other defendants, in any case, who set up the complainant's contract as against pretensions in the bill which are inconsistent with it. On the contrary, the complainant is in the attitude of seeking to impeach her own deed, and is, therefore, subject to the *onus* which attaches to that proceeding. 1 *Washburne on Real Property*, 263 *to* 270. 1 *Bright on Husband & Wife*, 447–48. 2 *Sugden on Vendors*, 219. *Power vs. Sheill*, 12 *Eng. Ch. Rep.*, 147.

Naill et al. *vs.* Maurer.

*S. C.*, 1 *Molloy*, 296. *Dyke vs. Randall*, 13 *Eng. L. & E. Rep.*, 411. *Stilly vs. Folger*, 14 *Ohio*, 610. *Cauley vs. Lawson*, 5 *Jones' Eq.* ( *N. C.*) 134. *Findley vs. Findley*, 11 *Grattan*, 437. *Mory vs. Michael*, 18 *Md. Rep.*, 227. *Roper on Husband & Wife*, 470, *&c. Gelser vs. Gelser*, *Bailey's Eq. Rep.*, 389. 11 *Md. Rep.*, 419. 1 *Code, Art.* 16, *sec.* 30.

*George H. Williams* and *Joseph L. Brent*, for the appellee :

I. To bar a widow of dower in this State, some estate should be settled by her husband by jointure or settlement before marriage. 1 *Code, Art.* 93, *sec.* 289. In this case there is no proof of any such settlement.

The marriage agreement, relied on in the answers, does not satisfy at law the requirements of the Code, it being, at best, nothing but an agreement, and its *specific performance* is practically sought to be enforced in this case. This a Court of Equity will not do, because its legal existence is not fairly established. Though executed before justices, there is no evidence that the husband ever acted upon it, or proof that he ever designed to act upon it. The failure to record it, and keeping it in his desk privately, is presumptive proof that he did not mean to act upon it. The recital in the paper that she was in possession of property both real and personal, is not true, even the deed of the ground-rent of $24 per annum, though dated before the marriage, is found not recorded at his death, and there is no proof even of its delivery to her in his lifetime, before or after marriage. *Power vs. Shiel*, 1 *Molloy's Rep.*, 296. 12 *Cond. Eng. Ch. Rep.*, 148. *McContee vs. Teller*, 2 *Paige*, 511.

Even if the legal existence of the paper be established, yet it does not, on its face, express itself to be in lieu of dower, and the provision for the wife is not only inadequate, but it could not have been fairly and intelligently entered into,

and a Court of Equity will not permit nor lend its aid to so monstrous and unreasonable an agreement to bar one of the most highly favored of legal rights. On the one side, the proof is of a widow in a state of destitution and supported by charity, on the other, an estate of upwards of $54,000, in which she is entitled to dower sought to be defeated by a pretended marriage agreement, and a deed of $4000 worth of property not delivered.

II. At common law a woman had no ability, by any ante-nuptial contract, to bar herself of her claim to dower in the lands of her intended husband.

The estate of dower was created and fostered by the ancient policy of the law; and even a jointure regularly settled on the woman, in anticipation of marriage, did not, by the common law, divest her of her dower. But by the 27th Henry 8th, it was first provided that when an estate in lands was secured to a wife by way of jointure, previous to marriage, it should bar her claim of her dower, but if the jointure was settled on her during her coverture, she had the election of accepting the jointure, or of enforcing her dower.

This statute was in force in Maryland—see *Kilty's Statutes* —and provides the only method by which, antecedent to marriage, the woman can be barred of her dower. But sec. 9 of this statute regarded the right to dower as a valuable right, and that the jointure accepted by the wife was the consideration for her waiving her title, and in case of the failure of any property settled on her by way of jointure, she was then remitted to her original title of dower for compensation.

And this principle has been constantly asserted and maintained by the Courts. *Hastings vs. Dickerson*, 7 *Mass.*, 153. *Gibson vs. Gibson*, 15 *Mass.*, 105. *Vance vs. Vance*, 21 *Maine*, 366. *Blackman vs. Blackman*, 16 *Ala.*, 634. *Whitehead vs. Middleton*, 2 *How.*, (*Miss.*,) 692. 1 *Wash-*

Naill et al. es. Maurer.

*burn on Real Prop.*, 270. *Roper on Husband & Wife*, 470.

Our Code, in adopting the provisions of this statute, extended this principle of compensation to devises of personal as well as real property, made by the husband to the wife in lieu of her dower and thirds, by declaring that if she accepted the devise, she should be considered a purchaser for a fair consideration. *Sec.* 288, *Art.* 93.

III. But assuming that the deposition of Basil Root is competent testimony, then this ante-nuptial agreement does not contain a true statement of the contract between the parties. Root states that Maurer claimed that, including a ground-rent, he had settled four thousand dollars upon the appellee, who assented to his statement.

It does not appear how such settlement was made, how secured, or whether it has ever been effective, or produced anything for the support of the appellee.

Whatever the agreement was, it rested in parol, and the record establishes beyond peradventure, that it was never carried into execution.

Even the ground-rent has failed, for the deed, not being recorded in the lifetime of the grantor, nor ever having been shown to have passed out of his possession, or to have been delivered, is insufficient to vest the wife with the legal title.

But, by the statute of frauds, no parol agreement can be set up to defeat the complainant's right of dower in lands, and hence, even if the parol contract were established with clearness, it must fail, but it is too vague to be recognized, even if valid. *Roper on Husband & Wife*, 471–2. *Harding vs. Hull*, 5 *H. & J.*, 478.

COCHRAN, J., delivered the opinion of this Court.

This bill was filed by the appellee for an allowance of dower in the real estate of which her husband, Paul Maurer, died seized. The appellants admit the material allegations

of the bill, but aver, by way of defence, that her right to dower was barred by an ante-nuptial contract with her husband, a copy of which they exhibit with their answer. As both sides concede, the question to be decided depends upon the true operation and effect of that instrument. We have considered, with much diligence and care, the circumstances under which this contract was executed, as well as the relations previously and then existing between the contracting parties; and we find, apart from those portions of the evidence covered by exceptions taken in the Court below, enough to satisfy us that the contract was entered into in good faith, and with a full and clear understanding of the purpose contemplated by its terms. There is not the slightest evidence that its execution was induced by imposition or fraud, or that the appellee was, from any cause, incompetent to bind herself by its stipulation. The contract was made in contemplation of marriage, and, as clearly appears, was intended to bar or prevent the acquisition thereby of any right by either in the property of the other, in order that the marriage proposed might take place. The main object in view was the consummation of the marriage, and it was to that end that the contract was executed. It seemed almost impossible to view the contract as founded on any other consideration, although the reciprocal character of the stipulations might be held to constitute one sufficient to make the contract binding and effective. But whether the marriage they proposed be expressly mentioned as a consideration or not, we think it must be regarded as such within the purview and meaning of the contract; and we accordingly hold that the contract cannot be avoided on that ground, nor can its legal operation be affected by the 289th section of Art. 93 of the Code. That is a simple statutory declaration, that a settlement of property by jointure or otherwise, on a woman by her husband, before marriage, shall bar her of dower in his lands; but it goes no further, and cannot be said to deprive

her of the power to bar her right to dower by any other form of ante-nuptial contract. It amounts to nothing more than a declaration of the effect of the settlement in that class of cases. This, however, is not the case of a settlement or jointure, but of a contract, by which the appellee has expressly relinquished all right to claim any estate or interest in the property of her deceased husband; a contract executed in good faith by parties legally competent, and, as we have said, sustained by a good consideration. Her power to bind herself by such a contract, in equity, must be admitted, and we do not doubt that this contract constitutes an equitable bar to the claim sought to be enforced by this bill. The authorities upon this point are full and conclusive. In *Dyke vs. Randall*, 13 *Eng. L. & E. Rep.*, 404, the Lord Chancellor, in distinguishing an equitable from a legal bar of dower, says: that as to an adult, it may depend upon contract, and "that there is no doubt you may bar any possibility; you may deal with your rights in this Court, of whatever nature they may be, by contract fairly entered into." In the case of *Cauley vs. Lawson*, 5 *Jones Eq. Rep.*, 132, an agreement between parties contemplating marriage, "that neither, after the death of one, should claim anything belonging to the other before marriage," was held sufficient in equity to bar the right to dower; and so, also, in *Findley's Ex'rs vs. Findley*, 11 *Gratton*, 434, it was said that parties, when about to contract the relation of husband and wife, "may by agreement vary or wholly waive the right of property which would otherwise result from the marriage." The case of *Gelser vs. Gelser*, 1 *Bailey's Eq. Rep.*, 387, is also in point. The agreement there, as here, was, that neither of the parties, upon the death of either, should claim any interest or estate in the property of the other; and this agreement was determined to be an equitable bar to the claim of dower.

This is not a case in which specific performance of the contract is sought by the appellants, as the appellee suggests,

Naill et al. *vs.* Maurer.

but one in which she seeks relief in violation of an agreement by which she is equitably bound; an agreement which, unimpeached, attaches to and suspends, or extinguishes the right or claim she seeks to have enforced; and it was therefore necessary for her, in making out a case upon which the relief sought could be granted, to show some defect in the contract upon which it could be declared void. This has not been done, and her claim to dower in her husband's property must, upon this record, be treated as barred by the contract. The 30th sec. of Art. 16 of the Code, giving Courts of Equity concurrent jurisdiction with Courts of Law in cases of dower, cannot affect this disposition of the case. That section, as we understand it, does not, in giving jurisdiction to Courts of Equity in such cases, confer the simple jurisdiction of a Court of Law, or limit the Courts of Equity in adjudicating claims for dower, by rules applicable only to proceedings at law. According to our construction of this provision, Courts of Equity are authorized to proceed according to the usual course in such Courts, and to determine and finally adjudicate claims for dower, by the principles and rules of equity; and in our opinion, where proceedings are had in equity to enforce a claim for dower the equities of the case should be considered and decreed upon accordingly.

Upon this consideration of the case, we shall reverse the decree of the Court below, and dismiss the bill without costs.

*Decree reversed and bill dismissed.*

(Decided July 19th 1866.)